UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH COPELAND,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>    Defendant. | Case No. 15-cv-01487-JCS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PORTIONS OF FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 17 |

## I. INTRODUCTION

Plaintiff Sarah Copeland alleges that her disability insurance provider, Liberty Life Assurance Company of Boston ("Liberty Life"), wrongfully terminated her long-term disability benefits and in so doing breached the insurance contract and the implied covenant of good faith and fair dealing. Copeland requests, among other damages and fees, punitive damages under Cal. Civ. Code § 3294 and treble punitive damages under Cal. Civ. Code § 3345. Liberty Life has moved to dismiss the prayer for punitive damages on the grounds that Copeland failed to plead sufficient facts supporting an award of punitive damages. Liberty Life has also moved to dismiss the prayer for treble punitive damages on the basis that Cal. Civ. Code § 3345 does not apply to punitive damages or claims arising out of common law. The Court held a hearing on July 10, 2015. For the reasons discussed below, Defendant's Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. FAC[2]

Sarah Copeland was employed as a nurse by the University of California at San Diego. Compl. at 2. As a university employee, she received disability insurance provided by Liberty Life. *Id*. Copeland is a resident and citizen of San Diego, California, while Liberty Life is a corporation incorporated in and with its principle place of business in the state of Massachusetts. *Id*. at 1–2.

On April 11, 2011, Copeland's physical sickness and injury rendered her unable to perform her job, and she thus took a disability leave. Compl. at 2. She submitted a long-term disability claim, which Liberty Life initially approved. *Id*. Copeland suffered from myofascial pain, chronic back pain, and radiculopathy. *Id*. at 3. A physician's review of Copeland's claim indicated that it was "unlikely that the claimant could reliably sustain full time work capacity at this time even within [certain restrictions] due to the severity of her pain and her current functional limitations." *Id*. In addition, a medical examiner found that Copeland could only sit for 30 minutes at a time and walk for 25 minutes at a time. *Id*.

Nonetheless, on July 3, 2013, Liberty Life conducted a "transferable skills analysis." Compl. at 3. Liberty Life determined that Copeland could perform alternative occupations as a Telephone Triage Nurse and a Nurse Care Manager and terminated her benefits on July 8, 2013. *Id*. Copeland appealed, showing that there were no job postings for a Telephone Triage Nurse in California and that she did not have the educational credential to be a Nurse Case Manager, which requires a bachelor's degree. *Id*. In addition, Copeland alleges that the identified positions required physical abilities that exceeded her limitations and work experience that she did not possess. *Id*. at 4. On September 5, 2013, Liberty Life orally advised Copeland that her benefits would continue but refused to advise her in writing. *Id*.

On July 30, 2014, Liberty Life solicited the opinion of Copeland's treating physician, who stated that Copeland could not sit for more than 30 minutes at a time or more than four hours a day and that to sit for even four hours in a work day, she would require frequent fifteen-minute breaks.

---

[2] The following factual background is based on the allegations in Plaintiff's FAC, which the Court takes as true for the limited purpose of this Motion. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Compl. at 4. Copeland alleges that Liberty Life disregarded the opinion. *Id*. Instead, Liberty Life conducted another occupational analysis and determined that Copeland could perform the same alternative occupations that Liberty Life identified in July 2013. *Id*. Thus, on October 16, 2014, Liberty Life terminated Copeland's benefits again. *Id*. at 5. Copeland appealed the decision and submitted evidence of her continued disabling medical condition and inability to perform the alternative occupations–including that she continued to suffer from myofascial pain; that she tried interventional injections such as facet joint blocks, sacroiliac joint injections, and epidurals, none of which helped; and that she tried different courses of therapy, none of which gave her much relief. *Id*. at 4–5. Copeland alleges that Liberty Life acknowledged her various interventional injections, her different courses of therapy, and their ineffectiveness, but nonetheless, on March 19, 2015, Liberty Life affirmed the termination of benefits on appeal. *Id*. at 5.

Copeland alleges that in not considering her medical restrictions and limitations, the "real world marketplace" availability of the so-called alternative occupations, and the educational and work experience requirements of the alternative occupations, Liberty Life breached the insurance contract in terminating her benefits. Compl. at 5.

Copeland further alleges that Liberty Life knew that she was entitled to benefits and yet still withheld them. Compl. at 6. She alleges that Liberty Life adopted a company-wide policy and procedure to not consider the actual availability of the suggested alternative occupations in the local job market and thus intentionally ignored California law in determining benefit eligibility. *Id*. She further alleges that Liberty Life employed a company practice of not considering a claimant's restrictions and limitations in determining the existence of alternative occupations. *Id*. at 5. In addition, Copeland alleges that Liberty Life failed to provide explanations of her benefits decisions in September 2013 and October 2014. *Id*. She alleges that Liberty Life unreasonably delayed her payments, failed to properly and objectively investigate her claim, and ignored the side effects from her medication. *Id*. She alleges that Liberty Life intended to cause her injury through its conduct and acted with willful and conscious disregard of her rights. *Id*. at 7. Copeland also alleges that as a result of Liberty Life's conduct, she has suffered anxiety, worry, mental and emotional distress. *Id*.

1    Copeland asserts two claims:  (1) breach of contract and (2) breach of implied covenant of
2    good faith and fair dealing ("bad faith claim").  As relief, Copeland requests (1) damages in excess
3    of $3,000.00 per month for non-payment of benefits, plus interest including prejudgment interest;
4    (2) damages in the amount of $1,000,000.00 for mental and emotional distress and other incidental
5    damages; (3) punitive damages in excess of $5,000,000.00; (4) trebling of any punitive damages
6    pursuant of Cal. Civ. Code § 3345; and (5) attorney's fees and costs.  Compl. at 8.

### B.   Motion

Liberty Life argues that Copeland's requests for punitive damages pursuant to Cal. Civ. Code § 3294 and treble punitive damages pursuant to Cal. Civ. Code § 3345 should be dismissed under Rule 12(b)(6).  Liberty Life argues that Copeland's allegations regarding punitive damages are factually deficient and in particular that the pleadings are merely conclusory with respect to the elements of "oppression, fraud, or malice" and corporate employer liability.  Mot. at 6–8.  As for treble punitive damages, Liberty Life argues that § 3345 does not apply to claims arising out of common law or to punitive damages in light of § 3345's plain language, statutory structure, legislative history, and the absurdities that follow from Plaintiff's interpretation.  Mot. at 10–25.  Liberty Life primarily argues that (1) punitive damages are not available unless a statute expressly permits punitive damages, which § 3345 does not; (2) the rules of statutory construction limit "a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter" to only remedies in the nature of "fines and penalties," which punitive damages are not; (3) the legislature's addition of punitive damages to the Consumers Legal Remedies Act ("CLRA") and simultaneous "omission" of punitive damages in § 3345 indicates that the legislature did not intend punitive damages to be available under § 3345; and (4) it is inconceivable that the legislature would permit § 3345 to provide treble punitive damages in insurance bad faith claims when the two other acts in the same bill do not:  California's unfair competition law ("UCL") is limited to restitution and injunctive relief and the CLRA does not apply to insurance bad faith claims.  *Id*.

### C.   Opposition

Copeland argues first that the prayer for punitive damages is not subject to dismissal under

4

1  Rule 12(b)(6) because Rule 12(b)(6) permits dismissal only for failure to state a "claim" upon
2  which relief can be granted, and punitive damages are part of the remedy, not the claim.  Opp'n at
3  6.  Copeland then argues that even if Rule 12(b)(6) applied, she has pled sufficient facts to
4  establish a plausible claim for punitive damages.  *Id*.  In support of her prayer for treble punitive
5  damages, Copeland cites to numerous cases allowing plaintiffs to plead treble punitive damages
6  pursuant to § 3345 in common law insurance bad faith claims, and she differentiates the cases
7  relied on by Liberty Life.  Opp'n. at 10–13.

### D.    Reply

In its reply, Liberty Life argues that Plaintiff's prayer for punitive damages is subject to Rule 12(b)(6) under *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010), and that Copeland has not met the pleading standard with respect to punitive damages.  Reply at 1. With respect to treble punitive damages under § 3345, Liberty Life argues that Copeland's authorities are unpersuasive and criticizes their analyses as inadequate and mistaken.  Reply at 15. In particular, Liberty Life claims that none of those authorities considered the argument that § 3345 does not "expressly" provide for punitive damages or that interpreting § 3345 as allowing punitive damages in insurance bad faith claims would permit § 3345 to give a remedy in insurance bad faith claims that neither the CLRA nor the UCL provides (since Plaintiff cannot assert an insurance bad faith claim under the CLRA and cannot recover punitive damages under the UCL). Reply at 16.

### E.    Requests for Judicial Notice

Liberty Life requests judicial notice of (1) Exhibit 1:  an order of the San Bernardino County Superior Court entered on August 7, 2014 in *Link v. Liberty Life Assurance Company of Boston, et al.*, Case No. CIVDS 140000; (2) Exhibit 2:  Defendant's Amended Request for Judicial Notice, filed on June 25, 2008, in *Novick v. UNUM Life Ins. Co. of Am.*, U.S. District Court, Central District of California, Case No. 2:08-cv-02830; and (3) Exhibit 3:  Legislative Counsel's Digest of Senate Bill No. 1157 (1987–1988 Reg. Sess.).  *See* Request for Judicial Notice in Support of Defendant Liberty Life Assurance Company of Boston's Motion to Dismiss ("Defendant's Request for Judicial Notice").  Copeland has not filed any objections.  Copeland

5

1  requests judicial notice of (1) Exhibit A: Declaration of Elizabeth Green and legislative history of
2  Senate Bill 1157, submitted in *Novick v. UNUM Life Ins. Co. of Am.*, 570 F. Supp. 2d 1207 (C.D.
3  Cal. 2008) and (2) Exhibit B: Reply Brief field by Liberty Life in *Klees v. Liberty Life Assur. Co.*
4  *of Boston*, No. CV 15-00992 DDP AJWX, 2015 WL 3867659 (C.D. Cal. June 23, 2015). *See*
5  Plaintiff's Request for Judicial Notice Submitted in Opposition to Motion to Dismiss. In addition,
6  Copeland has noticed the Court of the recently issued order in *Klees v. Liberty Life Assur. Co. of*
7  *Boston*, No. CV 15-00992 DDP AJWX, 2015 WL 3867659 (C.D. Cal. June 23, 2015). *See* Notice
8  of Additional Authority to Be Relied upon by Plaintiff in Opposition to Motion to Dismiss.

9  The Court takes judicial notice of Exhibits 1 and 3, but judicial notice with respect to
10 Exhibit 1 is limited to the existence of the document and not the correctness of the decision. *See*
11 *California Pac. Reg'l Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 13-CV-00540 NC, 2013 WL
12 2436602, at *2 (N.D. Cal. June 4, 2013) (judicial notice of legislative history of state statutes is
13 appropriate under Federal Rule of Evidence 201); *Care First Surgical Ctr. v. ILWU-PMA Welfare*
14 *Plan*, No. CV 14-01480 MMM AGRX, 2014 WL 6603761, at *3 (C.D. Cal. July 28, 2014) ("The
15 court may take judicial notice of unpublished court decisions, although notice is limited to the
16 existence of the documents and not to the truth of the matters asserted therein"). The parties'
17 remaining requests for judicial notice are denied as not necessary. *See California Pac. Reg'l Med.*
18 *Ctr.*, 2013 WL 2436602, at *2.

19 **III.   LEGAL STANDARD**

20 A complaint must state a claim upon which relief may be granted, and failure to do so is
21 grounds for dismissal. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule
22 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720
23 F.2d 578, 581 (9th Cir.1983). A complaint may be legally insufficient because it lacks a
24 cognizable legal theory or because it fails to allege facts that would support a valid theory.
25 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a Rule
26 12(b)(6) motion, a court takes "all allegations of material fact as true and construe[s] them in the
27 in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d
28 1480, 1484 (9th Cir. 1995). The allegations must state a claim to relief that is "plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Detailed factual allegations are not necessary, but the allegations must be more than "labels and conclusions" or "formulaic recitations[s] of the elements." *Id.*

## IV. ANALYSIS

### A. The FAC Alleges Facts Sufficient to State a Claim for Punitive Damages under § 3294.[3]

To hold Liberty Life liable for punitive damages, Copeland must establish "oppression, fraud, or malice" under § 3294(a) and "corporate employer" liability under § 3294(b). Cal. Civ. Code § 3294(a) provides as follows:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(a). In particular, malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). In addition, under Cal. Civ. Code § 3294(b), to hold a corporate employer liable for punitive damages, an officer, director, or managing agent of the corporation must have "advance knowledge of the unfitness of the employee and employed him or her with conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b).

Under California law, punitive damages are made available in disability insurance cases "to discourage the perpetuation of objectionable corporate practices" that take advantage of particularly vulnerable individuals for commercial gain. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1164–65 (9th Cir. 2002). Accordingly, punitive damages may be available against

---

[3] The Court assumes, without deciding, that prayers for punitive damages are subject to dismissal under Rule 12(b)(6) when the complaint fails to allege sufficient facts that support punitive damages.

an insurance company in a bad faith claim where the insurer's bad faith acts were "part of a conscious course of conduct, firmly grounded in established company policy" designed to take advantage of disability claimants for commercial gain. *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 922–23 (1978) (upholding award of punitive damages where insurer's refusal to accept plaintiff's offer of settlement and submission of matter to the insurer's attorney were part of a conscious course of conduct grounded in established company policy, designed to force a settlement more favorable to the insurer). Punitive damages may also be available against an insurance company in a bad faith claim where the insurance company improperly rejected diagnoses by plaintiff's physicians, lied about the relevance of her physician's opinions, attempted to impose evidentiary limits not set forth in the policy, made plaintiff jump through meaningless hoops, misled experts, and conducted surreptitious surveillance in violation of its own policies. *See Alberts v. Liberty Life Assurance Co. of Boston,* 65 F. Supp. 3d 790 (N.D. Cal. Aug. 19, 2014) ("*Alberts II*"). On the other hand, bare-bone allegations that the insurance company did not conduct a reasonable investigation into alternative occupations, deliberately ignored requirements of proposed alternative occupations that conflicted with plaintiff's medical restrictions, and deliberately misinterpreted physician opinions and medical evidence do not state a plausible claim for punitive damages. *See Alberts v. Liberty Life Assurance Co. of Boston*, No. C 14-01587 RS, 2014 WL 2465121, at *4 (N.D. Cal. June 2, 2014) ("*Alberts I*").

        Here, the FAC sufficiently alleges facts to support a reasonable inference that Liberty Life is liable for punitive damages. Copeland alleges that Liberty Life based her termination on her ability to perform "alternative occupations" (Telephone Triage Nurse and Nurse Case Manager) that either were unavailable in California or had requirements that exceeded Copeland's medical restrictions and professional qualifications. Compl. at 3–4. Copeland further alleges that Liberty Life had a company-wide policy to not consider the actual availability of jobs in the local market or a claimant's restrictions and limitations when identifying alternative occupations. Compl. at 5–6. Copeland also alleges that Liberty Life improperly rejected her treating physician's opinions, violated California law and Liberty Life's own written policy in its identification of "alternative occupations," and terminated her disability benefits a second time on the same grounds that it had

previously acknowledged as erroneous. Compl. at 2, 4. Interpreted in the light most favorable to Plaintiff, these allegations are sufficient to state a plausible claim for punitive damages. *See Neal*, 21 Cal. 3d at 922–23; *Alberts II,* 65 F. Supp. 3d 790.

### B. Treble Punitive Damages Are Available under § 3345 in Common Law Bad Faith Claims.

In actions brought by disabled persons or senior citizens to redress unfair or deceptive acts or practices, Cal. Civ. Code § 3345 provides up to treble recovery in certain circumstances:

> Whenever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter, and the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion, the trier of fact shall consider all of the following factors, in addition to other appropriate factors, in determining the amount of fine, civil penalty or other penalty, or other remedy to impose. Whenever the trier of fact makes an affirmative finding in regard to one or more of the following factors, it may impose a fine, civil penalty or other penalty, or other remedy in an amount up to three times greater than authorized by the statute, or, where the statute does not authorize a specific amount, up to three times greater than the amount the trier of fact would impose in the absence of that affirmative finding.

Cal. Civ. Code § 3345(b). Punitive damages are remedies that function to "punish or deter," and in a bad faith claim, § 3294 authorizes a trier of fact to impose punitive damages. *See* Cal. Civ. Code § 3294 ("the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant"). In addition, numerous courts have held that § 3345 allows treble recovery of punitive damages when a plaintiff in an insurance bad faith tort seeks punitive damages under § 3294, and this Court agrees. *See Alberts I*, 2014 WL 2465121, at *5–6 (holding that § 3345 allows treble recovery of punitive damages in insurance bad faith claims); *Klees v. Liberty Life Assur. Co. of Boston*, No. CV 15-00992 DDP AJWX, 2015 WL 3867659, at *8 (C.D. Cal. June 23, 2015) (holding that § 3345 makes treble damages available when "a disabled person sues an insurer and seeks punitive damages under Cal. Civ. Code § 3294"); *Williams v. Prudential Ins. Co.*, No. C 08-04170 SI, 2010 WL 431968, at *4 (N.D. Cal. Feb. 2, 2010) (where plaintiff seeks punitive damages under § 3294, plaintiff may seek to treble those damages pursuant to § 3345; "on its face, § 3345 limits treble damages not to statutory causes of action, but to statutory awards of punitive damages"); *Jernigan v. Cont'l Cas. Co.*, No. C

08-04409 JW, 2009 WL 593216, at *3 (N.D. Cal. Mar. 4, 2009) (trebling of punitive damages is available under § 3345 in an insurance bad faith claim); *Hood v. Hartford Life & Acc. Ins. Co.*, 567 F. Supp. 2d 1221, 1227–29 (E.D. Cal. 2008) (trebling of punitive damages under § 3345 applies to insurance bad faith claims); *Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1066–67 (C.D. Cal. 2008) (§ 3345 permits the trebling of punitive damages arising under § 3294, analyzing the legislative history of §§ 3345 and 3294 and finding that punitive damages served the purpose of punishing and deterring); *Johnston v. Allstate Ins. Co.*, No. 13-CV-574-MMA BLM, 2013 WL 2285361, at *4–5 (S.D. Cal. May 23, 2013) (plaintiff may recover treble punitive damages under § 3345 if she prevails on her insurance bad faith claim and meets the requirements under § 3294); *Novick v. UNUM Life Ins. Co. of Am.*, 570 F. Supp. 2d 1207, 1209–11 (C.D. Cal. 2008) ("§ 3345 provides for treble punitive damages" and "treble punitive damages are available as part of a bad faith claim").

### 1. Liberty Life's Cases Holding that § 3345 Does Not Apply to Common Law Bad Faith Claims Are Not Persuasive.

*Cobarrubias* simply asserts that § 3345 "is designed to triple statutory fines levied in actions for deceptive business practices; it does not apply to claims for common law bad faith," but does not provide any further explanation. *Cobarrubias v. Allstate Ins. Co.*, 1998 WL 656571 (C.D.Cal. July 10, 1998). Nor does the decision refer to or otherwise acknowledge the existence of § 3294. Similarly, *Schwartz* also does not mention § 3294: "Defendant correctly observes there is no statute authorizing fines, penalties, or other remedies for bad faith to serve as a 'predicate for invoking section 3345,' as bad faith is a creature of common law." *Schwartz v. Life Ins. Co. of N. Am.*, No. 06CV1416DMS(WMC), 2006 WL 6185656, at *5 (S.D. Cal. Sept. 14, 2006) (striking prayer for punitive damages in insurance bad faith claim). In a footnote, *Schwartz* specifically notes that while unfair insurance practices have been codified, damages arising under the unfair insurance practice statute are not codified. *Id.* at 5 n.1.

Liberty Life also provides the Court with a decision from San Bernardino County Superior Court, *Link v. Liberty Life Assur. Co. of Boston*, Case No. CIVDS 1400001 (Aug. 7, 2014). *See* Defendant's Request for Judicial Notice Ex. 1. *Link* cites *Hood* and concludes that the statute

1  providing punitive damages must also give rise to the underlying claim in order for § 3345 to
2  apply. The same proposition is advanced by Liberty Life. Mot. at 12–13. However, § 3345, on
3  its face, does not require the statute authorizing the remedy to also give rise to the underlying
4  claim. Cal. Civ. Code § 3345; *Williams*, 2010 WL 431968, at *4 ("on its face, § 3345 limits treble
5  damages not to statutory causes of action, but to statutory awards of punitive damages"). Thus,
6  the cases limiting § 3345 to statutory causes of action are not persuasive.

### 2. The Plain Language and Structure of § 3345 is Clear that It Applies to Punitive Damages.

Liberty Life also argues that under its plain language and structure, § 3345 allows only "fines and penalties"–not punitive damages. Mot. at 17; Reply at 14. To the contrary, the language of § 3345 is clear that it applies precisely to the type of damages authorized by § 3294. Section 3345 applies when a statute authorizes "a fine, or a civil penalty or other penalty, or any other remedy for the purpose or effect of which is to punish or deter," and § 3294 authorizes "damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code §§ 3345, 3294. To limit § 3345 to solely "fines and penalties" would be to ignore the last segment of the sentence. *See Martinez v. Traubner*, 32 Cal. 3d 755, 758, 653 P.2d 1046 (1982) ("significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose…a construction making some words surplusage is to be avoided"); *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 562 U.S. 277, 284–85 (2011) (finding that an excise tax, even though not expressly listed in the statute, fell into the catch-all section of the statute).

Liberty Life argues that "punitive damages are not available where…the statute does not *expressly* permit punitive damages," but the cases that it cites to all involve statutes that did not contain any form of catch-all alluding to punitive damages. Reply at 13, 16; *see In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007) (Labor Code § 203 does not allow punitive damages where the statute provides for "penalties" but contains no catch-all or reference to punitive damages); *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890, 908–09 (2001) (Cal. Civ. Code § 798.86 does not allow punitive damages where the statute specifically provides for a penalty not

11

exceeding $500 for each willful violation and includes no references to punitive damages or any catch-all involving punitive remedies); *Troensegaard v. Silvercrest Indus., Inc.*, 175 Cal. App. 3d 218, 228 (1985) (plaintiff could not recover punitive damages under § 3294 and civil penalties under § 1794 where § 1794 provides for a civil penalty but makes no reference to punitive damages or any catch-all involving punitive remedies).

Liberty Life also interprets *Clark* as limiting treble recovery to "penalties," but Liberty Life improperly clings to a literal and narrow interpretation of the word "penalty" where the context is clear that *Clark* used "penalty" more broadly to mean a "statutory remedy [with] 'the purpose or effect' of punishing or deterring." *Clark v. Superior Court*, 50 Cal. 4th 605, 614 (2010) ("Here, the trebled recovery provision comes into play when the governing statutory remedy has 'the purpose or effect' of punishing or deterring….For the reasons given above, we conclude that trebled recovery may be awarded under Civil Code section 3345…only if the statute under which recovery is sought permits a remedy that is in the nature of a penalty").

### 3. The Legislative History of §§ 3345 and 3294 Does Not Support Liberty Life's Position.

Liberty Life argues that the Legislature's express authorization of punitive damages under the CLRA and simultaneous "omission of punitive damages from section 3345 indicates that the Legislature intended no such remedy" (Mot. at 19), but the Court is not convinced that the Legislature "omitted" punitive damages from § 3345 when § 3345 expressly includes "any other remedy the purpose or effect of which is to punish or deter." Cal. Civ. Code § 3345.  The Court also does not see any "inconceivable" absurdity in permitting § 3345 to provide treble punitive damages in insurance bad faith claims when the two other acts in the same bill–UCL and CLRA– do not.  Mot. at 25; *see Clark*, 50 Cal. 4th at 612 (holding that § 3345 is different from the CLRA and not limited to actions covered by the CLRA because "had the Legislature intended section 3345 to be limited to actions under the Consumers Legal Remedies Act, it could simply have amended only that act.  Instead the Legislature simultaneously enacted Civil Code section 3345 as a separate statute that applies to 'actions brought'…'whenever a trier of fact is authorized by a statute'…to impose 'a fine, or a civil penalty or other penalty, or any other remedy the purpose or

12

effect of which is to punish or deter'").

Thus, Liberty Life has not established that Copeland is precluded from seeking damages under § 3345.

### V. CONCLUSION

For the reasons stated above, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 10, 2015

JOSEPH C. SPERO
Chief Magistrate Judge

13